UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Robert L. Follis, and
Georgia K. Follis,

              Plaintiffs,

   vs.

State of Minnesota Attorney
General, Human Services
Department, and Military
Affairs Department, Morrison
County Human Services
Department, and Todd County
Human Services Department,

              Defendants.          Civ. No. 08-1348 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Plaintiffs' Motion for Emergency Restraining Order.

See, Docket No. 9.  A telephonic Status Conference on the Motion, in order to address

the background of its substance, was conducted on June 26, 2008, at which time, the

Plaintiff Robert L. Follis ("Follis") appeared on his own behalf, and the Defendants

specially appeared by Donald J. Mueting, Minnesota Assistant Attorney General.[1]

During the course of the Status Conference, we were advised of legal

proceedings in the Minnesota State Courts, which could adversely affect the grant of

the extraordinary relief of a Temporary Restraining Order ("TRO") but, in order to

preserve the status quo, until we could be properly informed, we requested counsel for

the Defendants to contact his clients for the purpose of obtaining an informal stay of

the eviction of the Plaintiffs from their residence -- which was the focus of the

requested TRO -- until we issued a ruling on the Motion. Shortly after the conclusion

of the Status Conference, defense counsel advised that his client had acceded to the

---

[1] The Plaintiffs' Complaint was filed on May 16, 2008, see, <u>Docket No. 1</u>, and, by Order dated May 27, 2008, see, <u>Docket No. 5</u>, we directed the Plaintiffs to file an Amended Complaint that provided sufficient information so as to allow the Court, and the Defendants, to understand the nature of the Plaintiffs' claims, as well as the basis for this Court's jurisdiction over the subject matter of those claims. In addition, we directed the Plaintiff Georgia K. Follis to file an <u>in forma pauperis</u> ("IFP") Application separate from that of the Plaintiff Robert L. Follis. On June 25, 2008, the Plaintiffs complied with those directives by filing an Amended Complaint, and an IFP Application for Ms. Follis. We informed the Plaintiffs, in our Order of May 27, 2008, that no action would be taken on the file, including the service of their Complaint upon the Defendants, until our directives had been satisfied. By separate Order, we will address the Plaintiffs' IFP Applications.

Court's request.  See, <u>Docket No. 14</u>, at p. 1 ("[T]his is to confirm that the Minnesota Department of Military Affairs has agreed to suspend formal action to evict the occupants of the Department's Armory in the City of Long Prairie, Minnesota until such time as the Magistrate Judge has had an opportunity to review the files in the above matter and issue a recommendation on the plaintiffs' motion for a temporary restraining order.").

Subsequently, on June 27, 2008, the Court conducted a Hearing on the Plaintiffs' Motion for Emergency Restraining Order, at which time, Follis appeared to argue the Plaintiffs' interests, and the Defendants specially appeared by Donald J. Mueting, and Erik M. Johnson, Minnesota Assistant Attorneys General.  For reasons which follow, we recommend that the Plaintiffs' Motion for a TRO be denied.[2]

---

[2]Given the exigencies, we conducted the telephonic Status Conference just one (1) hour before the planned eviction of the Plaintiffs from their residence -- which was the specific target of their request for immediate injunctive relief -- so we did not have the opportunity to issue an Order to Show Cause, so as to extend jurisdiction over the persons of the Defendants.  Accordingly, counsel for the Defendants objected to the Court's personal jurisdiction over his clients, and also objected, on behalf of the Defendant Minnesota Department of Military Affairs ("MDMA"), to the Court's subject matter jurisdiction over that aspect of the Plaintiffs' claims.  For these purposes, we review the Plaintiffs' Complaint, and Amended Complaint indulgently, see, e.g., <u>Wishnatsky v. Rovner</u>, 433 F.3d 608, 610-11 (8th Cir. 2006), citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), as arguably stating a Federal Question under Title 42 U.S.C. §§1981 and 1983.  In doing so, the Defendants do not waive any
(continued...)

## II.  Factual and Procedural Background

In their Complaint, and Amended Complaint, the Plaintiffs allege two causes of action which appear to have no interrelationship, at least on the basis of those pleadings.  The first cause of action is directed to the "Human Services" Defendants, and pertains to Minnesota's program for the paying of benefits to Personal Care Assistants ("PCAs"), who attend to the needs of a disabled adult child.  See generally, Minnesota Statutes Section 256B.0625, Subdivision 19.  The Plaintiffs allege that Follis qualified for those benefits, owing to his care of his disabled adult son, but that, assertedly, the Human Services Defendants had an obligation to apply for those benefits on Follis' behalf, and failed to do so.[3]  The Plaintiffs allege that they are

---

[2](...continued)
jurisdictional objection, as reflected in their "special" appearances before this Court, and they may formally move for relief, on jurisdictional grounds, when or if they are properly served with process.

[3]Our independent research discloses that Follis had previously, in 1997 or 1998, applied for PCA benefit payments, which were related to Follis' care of an adult disabled son.  Those payments were denied to him, and he contested that denial in the Minnesota District Court for Morrison County, which affirmed the Minnesota Department of Human Services' denial of those benefits.  The decision of the Minnesota District Court was affirmed by the Minnesota Court of Appeals in 1998.  See, Follis v. Minnesota Department of Human Services, 1998 WL 88194 (Minn. App., March 3, 1998).  No appeal appears to have been taken from the decision of the Minnesota Court of Appeals.  We are informed, however, that, in 2001, the statute
(continued...)

- 4 -

aware of others, who allegedly are similarly situated, and who have received those payments.  Accordingly, the Plaintiffs assert a constitutional claim under Title 42 U.S.C. §§1981 and 1983.

Additionally, the Plaintiffs allege that they hold a contract for deed on their personal residence, in Long Prairie, Minnesota, which formerly was a National Guard Armory.  Apparently, the contract for deed had been entered with the Defendant Minnesota Department of Military Affairs ("MDMA").  During the Status Conference, Follis advised that the Plaintiffs have failed to make payment on the contract for deed for a period of approximately three (3) years.[4]  As a consequence of

---

[3](...continued)
applicable to the receipt of PCA benefit payments was modified in ways that were substantially different from the statutory language that applied with respect to Follis' earlier claim.

[4]Follis' representations as to the Plaintiffs' failure to make payments, on the contract for deed, is corroborated by the following recitation of the Minnesota Court of Appeals:

> Although Follis provided the down payment [i.e., on the contract for deed], he failed to make any of the annual payments that became due in June 2003, June 2004, and June 2005.  In 2005 Follis also breached the contract provision requiring him to pay all property taxes that were due and payable.

Follis v. State of Minnesota, 2007 WL 4303493 at *1 (Minn.App., December 11,
(continued...)

the failure to make payments on the contract for deed, the MDMA commenced cancellation proceedings against the Plaintiffs in the Minnesota District Court for Todd County.

Pursuant to statutory authority, see, <u>Minnesota Statutes Section 559.211</u>, the Plaintiffs sought to enjoin the termination of their contract for deed, arguing that they would have been able to honor their obligations, under the contract for deed, had they received the PCA benefit payments which, they assert, were improperly denied to them by the Human Services Defendants. The State District Court was not so persuaded, and denied the Plaintiffs' request for injunctive relief. The Plaintiffs appealed that denial to the Minnesota Court of Appeals, which affirmed the decision of the State District Court, reasoning, in pertinent part, as follows:

> The district court correctly concluded that it does not have authority to issue an injunction under section 559.211 unless the asserted claim "aris[es] under or in relation to" the contract for deed for Follis's interest in the real estate. Follis, through his letter to Todd County social services, raised a potential claim for medical-assistance benefits. Although Follis indicates that he would use his recovery to cure his default, his claim is otherwise completely unrelated to the contract for deed. This possible use of the recovery in a parallel action for medical assistance does not establish

_____

[4](...continued)
2007).

> a claim that arises under or in relation to the contract for deed. See Fraser v. Fraser, 642 N.W.2d 34, 38 (Minn.App. 2002)(concluding that dissolution action related to parties' **interest** in contract for deed but did **not** relate to or arise under contract for deed itself). Because Follis did not bring "an action arising under or in relation to" the contract for deed, section 559.211 did not authorize the district court to issue an injunction.

Follis v. State of Minnesota, 2007 WL 4303493 at *2 (Minn.App., December 11, 2007)[emphasis in original].

Finding no error in the State District Court's decision, the Minnesota Court of Appeals affirmed the District Court in all respects. Id. at *3. There appears to have been no appeal, by the Plaintiffs, from the decision of the Minnesota Court of Appeals, and the time to perfect such an appeal has now expired. See, Rule 117, Subdivision 1, Minnesota Rules of Civil Appellate Procedure (Petition for further review must be filed with the Minnesota Supreme Court "within 30 days of the filing of the Court of Appeals' decision.").

In their Motion for a TRO, the Plaintiffs raise the identical legal issue which, they argue, connects the two (2) claims that they have pled in their Complaint, and Amended Complaint, and that were rejected by a final Judgment of the Minnesota Courts. Another State Court proceeding, between Follis and the State of Minnesota, by and through the State's Adjutant General, arose as a result of the State's

commencement of an eviction action against Follis, owing to his default on the contract for deed.  See, <u>Docket No. 14</u>, at p. 3 (Notice of Cancellation of Contract for Deed).  By Findings of Fact, Conclusions of Law, Order and Judgment dated February 21, 2008, the Minnesota District Court for Todd County ruled in the State's favor, and sustained its action for eviction.  <u>Id.</u> at pp. 18-21. Judgment was entered, in the State District Court, on March 10, 2008.  Follis appealed the District Court's decision to the Minnesota Court of Appeals but, by Order dated May 13, 2008, that Court dismissed Follis' appeal as untimely.  <u>Id</u>. at pp. 22-25.  No appeal from the Minnesota Court of Appeals' Order was taken, and the time for an appeal has now expired.  See, <u>Rule 117, Subdivision 1, Minnesota Rules of Civil Appellate Procedure</u>.

Follis represents, and he has provided documentation that supports the representation, that the Minnesota District Court in Todd County issued a Writ of Recovery of Premises, and an Order to Vacate, pursuant to Minnesota Statutes Section 504B.361, on May 14, 2008.  See, <u>Docket No. 15</u>, at p. 1.  In a letter to the Plaintiffs, which is dated June 20, 2008, Terrence J. Palmer, who is the Comptroller of the MDMA, provided Follis with notice that, on June 25, 2008, at 10:00 o'clock a.m., the MDMA would serve him with the Writ of Recovery, "and have you and your personal

property and any other property you are storing at that location removed from the facility 24 hours after you are served with the writ." Id. at p. 2.

Follis advised, at the Status Conference, that he had been served with the Writ of Recovery on June 25, 2008. The Plaintiffs now seek an injunction that would enjoin their imminent removal from their residence, and the Defendants oppose the Plaintiffs' Motion as being barred by the doctrine of res judicata.

## III. Discussion

A.    Standard of Review.    An Injunction, whether denominated as a Preliminary Injunction, a Temporary Restraining Order, or a Permanent Injunction, is issued when "the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Education Minnesota Lakeville v. Indep. Sch. Dist. No. 194, 341 F. Supp.2d 1071, 1073 (D. Minn. 2004), citing Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1991). In deciding a Motion for injunctive relief, a Court must weigh: 1) the threat of irreparable harm to the moving party; 2) the movant's likelihood of success on the merits; 3) the balance between the harm to the movant if the injunction is denied, and the harm to other parties if the injunction is granted; and 4) the public interest. See, Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir.

1999); Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 601 (8th Cir. 1999); Dataphase Sys., Inc. v. CL Sys., Inc., supra at 113.

"These factors are not a rigid formula."  Bandag, Inc. v. Jack's Tire & Oil, Inc., supra at 926.  Rather, when applying these factors, "'a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene.'"  Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., supra at 601, quoting United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998), quoting, in turn, Dataphase Sys. v. CL Sys., Inc., supra at 113; see also, General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 624 (8th Cir. 1987)("[C]are must be exercised in balancing the equities, especially since a preliminary injunction motion is too early a stage of the proceedings to woodenly assess a movant's probability of success on the merits with mathematical precision.").

When seeking injunctive relief, the burden on the movant "'is a heavy one where * * * granting the preliminary injunction will give [the movants] substantially the relief [they] would obtain after a trial on the merits.'"  Sanborn Mfg. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 486 (8th Cir. 1993), quoting Dakota Indus., Inc. v. Ever Best Ltd., 944 F.2d 438, 440 (8th Cir. 1993); see also, Education Minnesota Lakeville v. Indep. Sch. Dist. No. 194, supra at 1073 ("[T]he party seeking

injunctive relief bears the burden of proving all the Dataphase factors."). In addition, "an injunction cannot issue if there is no chance of success on the merits * * *." Mid-America Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005), citing Firefighters Local Union No. 1784 v. Stotts, 457 U.S. 561, 589 (1984)(O'Connor, J., concurring), and AM General Corp. v. DaimlerChrysler Corp., 311 F.3d 796, 804 (7th Cir. 2002).

Accordingly, we are obligated to closely examine each of the requisite factors, in order to determine if this is one of those instances in which the "extraordinary remedy" of an injunction is warranted. See, Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003), citing Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987). Of course, if preliminary injunctive relief is warranted, the grant of the Motion "does not bind the District Court or the parties in any further proceedings in [the] case, for adjudication of a motion for a preliminary injunction is not a decision on the merits of the underlying case." Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., supra at 603.

B.   Legal Analysis.   We address each of the factors which govern our analysis, and which control whether injunctive relief is warranted.

1.    <u>The Threat of Irreparable Harm to the Plaintiffs</u>.  "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." <u>Watkins Incorporated v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003), citing <u>Adam-Mellang v. Apartment Search, Inc.</u>, 96 F.3d 297, 299 (8th Cir. 1996).  This is so because "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." <u>Bandag, Inc. v. Jack's Tire & Oil, Inc.</u>, 190 F.3d 924, 926 (8th Cir. 1999), quoting <u>Beacon Theatres, Inc. v. Westover</u>, 359 U.S. 500, 506-07 (1959).  "When there is an adequate remedy at law, a preliminary injunction is not appropriate." <u>Watkins Incorporated v. Lewis</u>, supra at 844, citing <u>Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.</u>, 871 F.2d 734, 738 (8th Cir. 1989).

"Courts have found in certain circumstances that the loss of one's home 'and the realistic prospect of homelessness constitute a threat of irreparable harm and satisfy the first prong of the test for preliminary injunction relief.'" <u>Baumgarten v. County of Suffolk</u>, 2007 WL 1490487 at *5 (E.D.N.Y., February 20, 2007), adopted, 2007 WL 1490482 at *5 (E.D.N.Y., May 15, 2007), quoting <u>Tellock v. Davis</u>, 2002 WL 31433589 at *7 n. 2 (E.D.N.Y., October 31, 2002), citing, in turn, <u>McNeil v. New York City Housing Auth.</u>, 719 F. Supp. 233, 254 (S.D.N.Y. 1989); see also, <u>Cousins</u>

- 12 -

v. Bray, 297 F. Supp.2d 1027, 1041 (S.D. Ohio 2003)("The eviction from their home of a financially insecure family in the middle of winter could well constitute irreparable harm."); Calvago v. Bisbal, 430 F. Supp.2d 95, 100 (E.D.N.Y. 2006).

Here, during the course of the Hearing on the Motion, Follis did not complain that either he, or his family, would be homeless if the eviction occurred; rather, he was concerned about obtaining sufficient time to remove his personal belongings from the residence, inclusive of some "million" or so books.  Apparently, at one time, Follis had intended to open a book store, but his plans did not come to fruition.  Although he represents that the residence houses his wife, a disabled son, and himself, Follis conceded that there would be another place where they could stay if an eviction occurred.  Moreover, this is not the usual case, where there are inadequate remedies at law.  Follis has twice exhausted his avenues of relief, in the Minnesota Courts, concerning the propriety of an eviction, and both without success.  We cannot readily characterize the exhaustion of a State's statutory remedies as being consistent with an inadequate remedy at law.

We need not, however, definitively resolve this factor, either for or against the issuance of an injunction, since, "even if this court were to determine that imminent eviction of [the Plaintiffs] from [their] home would be sufficient to find irreparable

- 13 -

injury, that would not be sufficient to warrant the grant [of an injunction] in the absence of a finding of probable success on the merits and the other required elements." In re Vytautas Vebeliunas, 2002 WL 535503 at *3 (S.D.N.Y., April 10, 2002), quoting In re Liggett, 118 B.R. 219, 222 (Bankr. S.D.N.Y. 1990). Accordingly, we proceed to the second factor.

2.      The Plaintiffs' Likelihood of Success on the Merits.  As to this factor, since the Motion for injunctive relief is solely focused on the MDMA's effort to have the Plaintiffs evicted from their residence, we focus our assessment on the probability of success as to the Plaintiffs' claim that, had the Human Services Defendants honored Follis' request for PCA benefit payments, the Plaintiffs would not have fallen in arrears on the contract for deed that they had entered with the MDMA.  We find that claim, even if couched in a Section 1981 or 1983 action, is barred by the doctrine of res judicata.[5]

_____

[5]Apart from the doctrine of res judicata, we have substantial doubt that the injunction, which the Plaintiffs request, could survive the prohibitions of the Anti-Injunction Act, see, Title 28 U.S.C. §2283.  Under Section 2283, Federal Courts are barred from granting "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  Title 28 U.S.C. §2283.  The MDMA's effort to evict the Plaintiffs is but the end aspect of the State Court proceedings.  We are aware of no exception to the Anti-Injunction prohibitions, under the circumstances
(continued...)

"It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Board of Education, 465 U.S. 75, 81 (1984), citing Allen v. McCurry, 449 U.S. 90, 96 (1980). "Prior state court adjudications are given preclusive effect even in later federal §1983 actions." Simmons v. O'Brien, 77 F.3d 1093, 1096 (8th Cir.1996); see also, Migra v. Warren City School Dist. Board of Education, supra at 83 ("Allen [v. McCurry, 465 U.S. 75 (1984)] * * * made clear that issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal §1983 suit as they enjoy in the courts of the State where the judgment was rendered."). Accordingly, we apply Minnesota principles of res judicata to determine the preclusive effect of the State Court rulings on the Plaintiffs' claims against the MDMA.

---

[5](...continued)
presented  here and, under the law of this Circuit, we are to "resolve any doubts in favor of allowing state courts to proceed without interference from the federal courts." Canady v. Allstate Ins. Co., 282 F.3d 1005, 1014 (8th Cir. 2002), citing In re Federal Skywalk Cases, 680 F.2d 1175, 1181 (8th Cir. 1982), citing, in turn, Atlantic Coast Line R.R. v. Locomotive Eng'rs, 398 U.S. 281, 297 (1970).  Since we find the doctrine of res judicata to fully resolve the "likelihood of success" factor, we do not further explore the Anti-Injunction Act, or any other potential legal bars to the injunction being requested.

Under Minnesota law, "[r]es judicata precludes parties from raising subsequent claims in a second action when: '(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privities; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter.'"  Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P, 732 N.W.2d 209, 220 (Minn. 2007), quoting Hauschildt v. Beckingham, 686 N.W.2d 829, 840 (Minn. 2004).  "Res judicata prohibits parties from raising a claim in a second suit that was, or 'could have been,' litigated in the earlier action." Drewitz v. Motorwerks, Inc., 728 N.W.2d 231, 239 (Minn. 2007), citing Hauschildt v. Beckingham, supra at 840; see also, Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P, supra at 220 ("Res judicata applies equally to claims actually litigated and to claims that could have been litigated in the earlier action."), citing State v. Joseph, 636 N.W.2d 322, 327 (Minn. 2001).

Here, plainly the earlier actions, in the Minnesota Courts -- both Follis' unsuccessful effort to obtain an injunction to forestall the MDMA's eviction action, and the subsequent eviction action -- involved the same factual circumstances as the Plaintiffs now raise in Federal Court.  The pertinent parties, in both the State Court

actions, and this Federal case, are identical,[6] and the State Court actions resulted in final Judgments, as no further appeals were taken, in either State Court proceeding, from the final results that were adverse to Follis.  Nor can it be said that Follis did not have a full and fair opportunity to litigate the State actions, and he has not shown any objectively legitimate basis on which to make any such claim.

Of course, we are mindful that, in the earlier State Court actions, Follis did not expressly include claims under Sections 1981and 1983.  Such a difference in the legal theories of recovery, however, does not vitiate the preclusive effect of the prior State Court Judgments.  As the Court explained, in <u>Hauschildt v. Beckingham</u>, supra at 840-41:

> Therefore, the focus of res judicata is whether the second claim "arise[s] out of the same set of **factual circumstances**."  Hauser [v. Mealey, 263 N.W.2d 803,]

---

[6]We recognize that the State Court proceedings only named Follis, and not his wife, Georgia.  Moreover, we acknowledge that, under Minnesota law, "[a] husband and wife are not in privity solely because of their marital relationship."  <u>Deli v. Hasselmo</u>, 542 N.W.2d 649, 656 (Minn.App. 1996), rev. denied (Minn., April 16, 1996), citing <u>Dart v. McGraw</u>, 283 N.W. 538, 539 (Minn. 1939).  While the Record before us does not disclose whether Georgia signed the contract for deed, in conjunction with Follis, if, in fact, she did, then her interests would have been in privity with Follis' -- that is, she shared a common interest with Follis in the contract -- and, if she did not sign the contract for deed, then she would have no legal basis on which to contest the eviction.  Accordingly, we conclude that the parties in this Federal action are the same, or in privity, with the parties in the State Court proceedings.

807 [(Minn. 1978)]; see also Meagher ex rel. Pension Plan
v. Bd. of Trustees of Pension Plan, 921 F. Supp. 161, 167
(S.D.N.Y. 1995)(stating "the **facts** surrounding the
occurrence which constitutes the cause of action -- not the
legal theory upon which [plaintiff] chose to frame his
complaint -- must be identical in both actions to trigger res
judicata."), aff'd, 79 F.3d 256 (2nd Cir. 1996)).

The "common test for determining whether a former
judgment is a bar to a subsequent action is to inquire
whether the same evidence will sustain both actions."
McMenomy v. Ryden, 276 Minn. 55, 58, 148 N.W.2d 804,
807 (1967). In addition, claims cannot be considered the
same cause of action if "the right to assert the second claim
did not arise at the same time as the right to assert the first
claim." [Care Inst., Inc.-Roseville v. County of Ramsey,
612 N.W.2d 443,] 447 [(Minn. 2000)].

[Emphasis in original].

As we have detailed, the factual circumstances of both of the State Court actions, and

the Plaintiffs' current claims against the MDMA, upon which they now seek

injunctive relief, are identical. There is no reason why Follis could not have raised

any constitutional issues, which he might now seek to assert here, in those State Court

proceedings.

Accordingly, we conclude that the Plaintiffs' claims against MDMA, insofar

as they are the basis for their current request for injunctive relief, are barred by res

judicata, and therefore, there is no likelihood that the Plaintiffs will be successful on that claim.

        3.    <u>The Balance Between the Harms</u>.  Where, as here, the Plaintiffs have no likelihood of success on the merits of their claims against the MDMA, there are no harms to balance.  See, e.g., <u>Phelps-Roper v. Nixon</u>, 509 F.3d 480, 485 (8th Cir. 2007).  The Plaintiffs have lived in a dwelling place, at no expense to themselves, for a period of at least five (5) years.  They have done so by breaching the contract for deed that they signed with the MDMA.  Moreover, they have jeopardized the MDMA's title to that property, by failing to pay the real estate taxes that were due. While Follis argues that he would have paid the required installments on the contract for deed, if he would have received the PCA benefit payments from the Human Services Defendants, the argument is of small comfort to the MDMA, which has funded the Plaintiffs' housing expense, without legal recourse, except by means of an eviction.  Under these circumstances, we cannot say that the balance of the harms favors the granting of the injunction.

        4.    <u>The Public Interest</u>.  The Courts of this District have consistently recognized "that public policy favors the enforcement of valid contracts and the protection of legitimate business interests." <u>E.W. Blanch Holdings, Inc. v. Knudson</u>,

2001 WL 1618165 at *6 (D. Minn., May 10, 2001); see also, Universal Hospital

Services, Inc., 2002 WL 724242 at *5 (D. Minn., April 19, 2002); Lisec America, Inc.

v. Wiedmayer, 2005 WL 3143985 at *6 (D. Minn., November 23, 2005), citing

Benfield v. Moline, 351 F. Supp.2d 911, 919 (D. Minn. 2004); Cargo Protectors, Inc.

v. American Lock Co., 92 F. Supp.2d 926, 935 (D. Minn. 2000).  As a consequence,

this factor also favors the denial of the request for injunctive relief.

In sum, we conclude that the factors which govern our analysis clearly support

the denial of the Plaintiffs' Motion for Emergency Restraining Order, and therefore,

we recommend that the Motion be denied in all respects.[7]

NOW, THEREFORE, It is --

---

[7]Since the relief that the Plaintiffs request in their Motion for Emergency Restraining Order is identical to that requested in their Motion for a Permanent Injunction, the recommendation we make applies with equal force to the latter Motion, and therefore, we also recommend a denial of their request for permanent injunctive relief, and we cancel the Hearing, which had previously been scheduled for July 24, 2008, on that Motion.

RECOMMENDED:

That the Plaintiffs' Motion for Emergency Restraining Order [Docket No. 9], and their Motion for a Permanent Injunction [Docket No. 2], be denied.

Dated:  June 30, 2008                    s/Raymond L. Erickson
                                         Raymond L. Erickson
                                         CHIEF U.S. MAGISTRATE JUDGE

### NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 18, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 18, 2008,** unless all interested parties

stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the

transcript in order to resolve all of the objections made.