UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * * * *

REPORT AND RECOMMENDATION

* * * * * * * * * * * * * * * * * * * * *

Robert L. Follis, and
Georgia K. Follis,

        Plaintiffs,

  vs.

State of Minnesota Attorney
General, Human Services
Department, and Military Affairs
Department; Morrison County
Human Services Department,
and Todd County Human Services
Department,

        Defendants.        Civ. No. 08-1348 (JRT/RLE)

* * * * * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motions to Dismiss. A Hearing on the Motions was held on January 14, 2010, at which time, the Plaintiffs Robert L. Follis

("R. Follis"), and Georgia K. Follis ("G. Follis"), appeared pro se; the Defendants State of Minnesota Attorney General, Human Services Department, and Military Affairs Department (the "State Defendants"), appeared by Jan M. Haapala, Assistant Attorney General; and the Defendants Morrison County Human Services Department, and Todd County Human Services Department (the "County Defendants"), appeared by James R. Andreen, Esq. For reasons which follow, we recommend the Defendants' Motions to Dismiss be granted.

## II. Factual Background

An indulgent reading of the Complaint, and the Amended Complaint, see, Williams v. Carter, 10 F.3d 563, 567 (8th Cir. 1993)("Pleadings and other documents filed by pro se litigants should be treated with a degree of indulgence, in order to avoid a meritorious claim's being lost through inadvertence or misunderstanding."), citing Estelle v. Gamble, 429 U.S. 97 (1976), discloses that the Plaintiffs allege two (2) unrelated causes of action. The first is directed at the State and County Human Services Departments ("DHSs"), and pertains to Minnesota's program for paying wages to Personal Care Assistants ("PCAs"), who attend to the needs of disabled adult children. See generally, Minnesota Statutes Section 256B.0625, Subdivision 19.

The Plaintiffs allege that R. Follis qualified for those benefits, owing to his care of his disabled adult son, and that, assertedly, the County Defendants had an obligation to apply for those benefits from the State, on R. Follis' behalf, and failed to do so, thereby placing R. Follis in "involuntary servitude," in violation of the Thirteenth Amendment, and also in violation of his rights to equal protection because, the Plaintiffs allege, they are aware of others who have received those payments. In addition, the Plaintiffs allege that the State Department of Human Services was either in complicity with the County Defendants' alleged failures, or were "lax" in supervising the County Defendants, and therefore, is also responsible for the alleged violations. According to the Plaintiffs, the failure to pay PCA wage benefits interfered with their contract for deed, which they held with the Defendant Minnesota Department of Military Affairs ("MDMA"). The Plaintiffs advance their constitutional claims pursuant to Title 42 U.S.C. §§1981, and 1983.

According to R. Follis' argument at the Hearing, the Plaintiffs lived in Morrison County, until August of 2002, at which time, they moved to Todd County. Prior to 2001, Minnesota law did not allow individuals in the Plaintiffs' circumstances to receive PCA wages but, in 2001, the law changed such that there was now a waiver option available, for which the Plaintiffs could qualify. See, <u>Minnesota Department</u>

of Human Services Bulletin No. 01-56-24, Amended Complaint, Docket No. 7, at p. 5 of 13. R. Follis urged, at the Hearing, that a "Mr. Baimer" [phonetic], who worked for the Morrison County DHS, did not inform the Plaintiffs that they could qualify for those benefits under the new waiver provision. The Plaintiffs argue that only the employees of the County DHS could initiate the application process for the waivers, and therefore, that Mr. Baimer had to duty to apply for the benefits on their behalf or, at a minimum, to inform them of the change in the law.

Upon learning through his own research some time in 2006, that he may qualify for the waiver, R. Follis assertedly applied to the Todd County DHS for retroactive benefits, for the period from August 1, 2002, to June 6, 2005. The DHS adjudicated his claim through its administrative process, and denied him wage benefits. R. Follis appealed that adverse decision to the Minnesota District Court in Todd County. See, In the Matter of: Robert Follis v. Comm'r of Minn. Dep't of Human Services, Todd County Department - Social Services, Minnesota Court File No. CV-06-104, Docket No. 23-1, at 1. The District Court affirmed the ALJ's ruling, and rejected R. Follis' argument that the Todd County DHS had an obligation to inform him of changes in the law, effective in the year 2001, with respect to the eligibility of family members of disabled adult children. See, Follis v. Commissioner of Minnesota Department of

Human Services, <u>Docket Nos. 23-1 and 28-1</u> at 4-8 of 16.  The Court also found that

R. Follis was not entitled to PCA wage benefits, because he did not apply for a waiver

under Minnesota Statutes Sections 256B.0651, or 256B.0653.  <u>Id.</u>  According to the

Plaintiffs, R. Follis appealed that decision to the Minnesota Court of Appeals, but the

Court denied his application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> as frivolous.  R. Follis took

no appeal from that decision.[1]

In the second cause of action, the Plaintiffs allege that they held a contract for

deed on their personal residence, in Long Prairie, Minnesota, which formerly was a

National Guard Armory ("the Armory").  Apparently, the contract for deed had been

entered with the MDMA.  The Plaintiffs failed to make payments on the contract for

deed, for a period of approximately three (3) years.[2]  As a consequence of that

_____

[1]Our independent research discloses that R. Follis previously applied for PCA benefits, prior to 1997, and before the 2001 law change, which were related to his care of an adult disabled son.  Those payments were denied to him, and he contested that denial in the Minnesota District Court for Morrison County, which affirmed the Minnesota DHS's denial of those benefits.  The decision of the Minnesota District Court was affirmed by the Minnesota Court of Appeals in 1998.  See, <u>Follis v. Minnesota Department of Human Services</u>, 1998 WL 88194 (Minn. App., March 3, 1998).  No appeal appears to have been taken from the 1998 decision of the Minnesota Court of Appeals.

[2]The Plaintiffs' representations, as to the their failure to make those payments, is  corroborated by the following recitation of the Minnesota Court of Appeals:

(continued...)

extended failure to make payments, the MDMA served notice on the R. Follis of its intent to cancel the contract for deed. See, <u>Notice, Docket 14-1, Exhibit B</u>, at p. 3-8. The Plaintiffs then moved the Minnesota District Court for Todd County, pursuant to Minnesota Statutes Section 559.211, to temporarily enjoin the termination of the contract for deed, arguing that they would have been able to make their payments had the Human Services Defendants given them the PCA benefit payments which, they assert, were improperly denied to them. The State District Court was not so persuaded, and denied the Plaintiffs' request for injunctive relief.

The Plaintiffs appealed that denial to the Minnesota Court of Appeals, which affirmed the decision of the State District Court. See, <u>Follis v. State of Minnesota</u>, 2007 WL 4303493 at *2-3 (Minn. App., December 11, 2007), attached at <u>Docket No. 28-1</u>, at pp. 1-3. There appears to have been no appeal, by the Plaintiffs, from the decision of the Minnesota Court of Appeals, and the time to perfect any such appeal

---

[2](...continued)
> Although Follis provided the down payment [i.e., on the contract for deed], he failed to make any of the annual payments that became due in June 2003, June 2004, and June 2005. In 2005 Follis also breached the contract provision requiring him to pay all property taxes that were due and payable.

<u>Follis v. State of Minnesota</u>, 2007 WL 4303493 at *1 (Minn.App., December 11, 2007).

has now expired. See, <u>Rule 117, Subdivision 1, Minnesota Rules of Civil Appellate Procedure</u> (Petition for further review must be filed with the Minnesota Supreme Court "within 30 days of the filing of the Court of Appeals' decision."). Further, it does not appear that the Plaintiffs commenced any other challenge to the termination of their contract for deed. See, <u>Docket No. 14-1</u>, at p. 17 of 23 (Eviction Action -- Findings of Fact, Conclusions of Law, Order and Judgment).

Another State Court proceeding, between R. Follis and the State of Minnesota, by and through the State's Adjutant General, arose as a result of the State's commencement of an eviction action against R. Follis, owing to his default on the contract for deed. See, <u>Docket No. 14-1</u>, at p. 3 (Notice of Cancellation of Contract for Deed). By Findings of Fact, Conclusions of Law, and Order and Judgment, dated February 21, 2008, the Minnesota District Court for Todd County ruled in the State's favor, and sustained the State's action for eviction. <u>Id</u>. at pp. 18-21. Judgment was entered, in the State District Court, on March 10, 2008. Follis appealed the District Court's decision to the Minnesota Court of Appeals but, by Order dated May 13, 2008, that Court dismissed Follis' appeal as untimely. <u>Id</u>. at pp. 22-25. No appeal from the Minnesota Court of Appeals' Order was taken, and the time for an appeal has

now expired.  See, <u>Rule 117, Subdivision 1, Minnesota Rules of Civil Appellate Procedure</u>.

By Order dated September 4, 2008, following our Report and Recommendation, see, <u>Docket No. 16</u>, the District Court, the Honorable John R. Tunheim presiding, denied the Plaintiffs' Motion for a TRO, and further denied the Plaintiffs' Motion for a Permanent Injunction. See, <u>Order</u>, <u>Docket No. 30</u>.  Thereafter, the Defendants filed Motions to Dismiss the Plaintiffs' Complaint. See, <u>Docket Nos. 19 and 26</u>.  However, on October 6, 2008, the Plaintiffs filed a Notice of Appeal, in which they notified the Court of their intention to appeal the denial of their Motion for a TRO, and their Motion for a Permanent Injunction, to our Court of Appeals. See, <u>Docket No. 36</u>. On the same date, the Plaintiffs filed a Motion for a Stay, in which they requested that we stay this action, pending the resolution of their appeal.  See, <u>Docket No. 38</u>.

By Order dated December 29, 2008, following our Report and Recommendation, see, <u>Docket No. 47</u>, the District Court, the Honorable John R. Tunheim presiding, granted the Plaintiffs' Motion for a Stay until the Court of Appeals had ruled on the Plaintiffs' pending Appeal. See, <u>Docket No. 49</u>.  Thereafter, on June 24, 2009, the Court of Appeals affirmed the District Court's  denial of the Plaintiff's request for preliminary injunctive relief.   See, <u>Docket Nos. 52-53</u>.

Accordingly, by Order dated October 30, 2009, following our Report and Recommendation, see, <u>Docket No. 55</u>, the District Court, the Honorable John R. Tunheim presiding, lifted the Stay. See, <u>Docket No. 64</u>. As noted, the parties now appear before the Court on the Defendants' two (2) Motions to Dismiss. See, <u>Docket Nos. 26 and 67</u>.

The Plaintiffs contend that their seemingly unrelated causes of actions -- the PCA wage benefits, and the contract for deed and eviction -- are connected by virtue of the fact that the State of Minnesota owes them more than the value of the Armory, and that, had they been paid the PCA wage benefits, they would not have fallen into arrears on the contract for deed. The Plaintiffs request relief in the form of payments, at the PCA wage rate plus interest, and they request that the Armory be awarded to them, as part of their damages award, up to the property's value. See, <u>Amended Complaint</u>, <u>Docket No. 7</u>, at p. 2. The Defendants have moved for a dismissal of the Plaintiffs' claims, and allege an absence of subject matter jurisdiction or, alternatively, their Complaint fails to state a claim upon which relief can be granted.[3]

---

[3]Our review of the pleadings raises an additional issue, concerning whether G. Follis has sufficiently pled her basis for standing in this action. As we noted in our Report and Recommendation on the TRO, "the Record before us does not disclose whether [G. Follis] signed the contract for deed, in conjunction with [R.] Follis, if, in
(continued...)

III.  <u>Discussion</u>

A.  <u>Standard of Review</u>.  A party may challenge a Court's subject matter jurisdiction at any time, under Rule 12(b)(1), Federal Rules of Civil Procedure, since such a defense may not be waived.  See, <u>Moubry v. Independent School District No. 696</u>, 951 F. Supp. 867, 882 (D. Minn. 1996), citing <u>Northwest Airlines, Inc. v.</u>

---

[3](...continued)
fact, she did, then her interests would have been in privity with [R.] Follis' -- that is, she shared a common interest with [R.] Follis in the contract -- and, if she did not sign the contract for deed, then she would have no legal basis on which to contest the eviction."  See, <u>Docket No. 16</u>, at p. 17, n. 6.  As a result, as to the contract for deed, G. Follis' claims are either duplicative of R. Follis', or she has no standing.  See, <u>International Ass'n of Firefighters of St. Louis v. City of Ferguson</u>, 283 F.3d 969, 975 (8th Cir. 2002), cert. denied, 537 U.S. 1105 (2003).

Similarly, with respect to the claim for PCA wage benefits, the pleadings do not disclose whether G. Follis ever performed PCA services, or was denied wage benefits for those services.  She informed the Court, at the Hearing, that she provided PCA services to her son, but she reported that there is no "physical record" of those services.  To the extent G. Follis attempts to allege that she is entitled to PCA wage benefits -- an allegation which is not contained in the pleadings -- she has not alleged a violation of any Federal right that is related to the Defendants' conduct towards her personally, nor does she allege any violation of a Minnesota law which she attempts to litigate here.  See, <u>Packett v. Stenberg</u>, 969 F.2d 721, 726-27 (8th Cir. 1992).  To the extent G. Follis' claim is that the Defendants' conduct towards R. Follis had an impact on her financially, that claim is subsumed in the claims advanced by R. Follis, and would not provide her standing to make the claims on her own.  See, <u>Alternate Fuels, Inc. v. Cabanas</u>, 538 F.3d 696, 973 (8th Cir. 2008); cf., <u>International Ass'n of Firefighters of St. Louis v. City of Ferguson</u>, supra at 975 (the plaintiff's claim was distinct from her husband's because she alleged that her own political activities were chilled by the city ordinance which directly affected her husband).

Transport Workers, 451 U.S. 77, 95 (1981); Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993)("Lack of subject matter jurisdiction * * * cannot be waived[;] [it] may be raised at any time by a party to an action, or by the court sua sponte."). "In order to properly dismiss an action under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either upon its face or upon the factual truthfulness of its averments." Moubry v. Independent School Dist. No. 696, supra at 883, citing Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).

If the defendant brings a facial challenge -- a challenge that, even if truthful, the facts alleged in a Complaint are insufficient to establish jurisdiction -- the Court reviews the pleadings alone, and "the non-moving party [is afforded] the same protections that it would receive under a Rule 12(b)(6) motion to dismiss." Carlson Holdings, Inc. v. NAFCO Ins. Co., 205 F. Supp.2d 1069, 1073 (D. Minn. 2001), citing Titus v. Sullivan, supra at 593; Osborn v. United States, supra at 729 n. 6. Accordingly, "[t]he court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction." Id. at 1073.

However, in factual challenges to subject matter jurisdiction -- contending that the allegations in the Complaint, that are intended to establish jurisdiction, are insufficiently supported by the facts -- the Court "may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6)." Id. When a plaintiff's "'allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof,'" "[a]nd * * * for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence.'" Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969), quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

Further, when reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint, and "construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). All reasonable inferences, from the facts alleged in the Complaint, must also be drawn in favor of the nonmoving party. See, Maki v. Allete, Inc., supra at 742. "A complaint shall not be dismissed for its

failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."[4]  Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998); see also, Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp. 2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."  Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).  "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions."  Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998); see also, Bell Atlantic Corp. v.

---

[4]We recognize that the "no set of facts" standard, in reviewing Motions to Dismiss, was abrogated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007)(the standard in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), of "no set of facts" "has earned its retirement.").  Nevertheless, the abrogation did not change the Court's "accepted pleading standard:  once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id.  Here, we apply the Supreme Court's "accepted pleading standard."

Twombly, 550 U.S. 554, 555 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

B.    Legal Analysis.  The Defendants challenge the Complaint on a number of grounds, including immunity, the Rooker-Feldman doctrine, an inability to be sued, a failure to state a claim, and Res Judicata. We address each ground in turn.

1.    The Rule 12(b)(1) Challenges.

a.    Eleventh Amendment Immunity. The State Defendants contend that they are entitled to immunity from this suit for damages, pursuant to Eleventh Amendment jurisprudence, that they have not waived that immunity, and therefore, that they are immune from suit.[5]  See, State Defendants' Memorandum in

---

[5]The County Defendants join in the State Defendants' arguments, to the extent that they apply, and they assert that their Human Services Departments are an arm of the State, but do not further discuss that issue, nor do they provide any support for that legal conclusion.  Generally, Counties may not claim immunity from suit under the Eleventh Amendment, even when "'such entities exercise a "slice of state power".'" Northern Ins. Co. v. Chatham County, 547 U.S. 189, 193-94 (2006), quoting Lake Country Estates v. Tahoe Regional Planning Agency, 440 U.S. 391, 401 (1979); Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir.

(continued...)

Support ("State Defendants' Memo"), Docket No. 27, at p. 7. The Eleventh Amendment protects the State, and arms of the State, from liability for monetary damages in a Section 1983 action, and in a Section 1981 action. See, Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996)(in a Section 1983 action, a State Agency may invoke Eleventh Amendment immunity, if the practical result of a suit would result in a Judgment against the State itself), cert. denied, 519 U.S. 1148 (1997); see also, Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir. 1995)(involving Sections 1981, and 1983 action); Qu v. Board of Regents of University of Minnesota, 2009 WL 2900334 at *3 (D. Minn., September 2, 2009)(involving a Section 1981 action). The immunity extends to State officials, who are named as individual defendants acting in their official capacity. Hadley v. North Arkansas Community Technical College, supra at 1438. When the action is against the office, and not the person, there is no difference between such a suit, and

---

[5](...continued)
1996), cert. denied 76 F.3d 1437 (1997). This general rule may be overcome by a showing that the County is an "arm of the state." Northern Ins. Co. v Chatham County, supra at 194; see also, Hartford Cas. Ins. Co. v. Price, 435 F. Supp.2d 566, 570 (N.D. Tex. 2006). Here, the County Defendants make no showing on this point, and so, we do not recommend dismissal of the claims against the County Defendants under the Eleventh Amendment immunity doctrine.

- 15 -

a suit against the State itself.  See, <u>Hafer v. Melo</u>, 502 U.S. 21, 25-26 (1991); <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71 (1989).

The Plaintiffs' Complaint does not name any individual Defendants,[6] but names the Minnesota Attorney General, the Human Service Department, and the Military Affairs Department.  The Plaintiffs do not allege any waiver of Eleventh Amendment immunity, by any of the State Defendants, and a review of the Record does not disclose any such waiver by the State.  See, <u>Faibisch v. University of Minnesota</u>, 304 F.3d 797, 800 (8th Cir. 2002)("To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so.").

It is clearly established that the Attorney General's Office, and the Human Services Department, may invoke the immunity doctrine, as they have done here.  See, <u>Anderson-Tully Co. v. McDaniel</u>, 571 F.3d 760, 763 (8th Cir. 2009)(Attorney General), cert. denied, --- U.S. --- , 130 S.Ct. 756 (2009); <u>Pediatric Specialty Care,</u>

---

[6]In their Complaint and Amended Complaint, the Plaintiffs list the Directors of each agency, as part of the addresses, but do not assert that those Directors are being sued in their individual capacities, nor do they name those individuals in the captions of their pleadings.  Our Circuit precedent dictates that a Complaint, which does not specify that a government official is being sued in his or her individual capacity, should not be interpreted to assert an individual-capacity claim, and we decline to do so here.  See, <u>Baker v. Chisom</u>, 501 F.3d 920, 924 (8th Cir. 2007), cert. denied --- U.S. --- , 128 S.Ct. 2932 (2008); <u>Egerdahl v. Hibbing Community College</u>, 72 F.3d 615, 619 (8th Cir. 1995).

Inc. v. Arkansas Department of Human Services, 443 F.3d 1005, 1017 (8th Cir. 2009)(State Department of Human Services), judgment vacated in part on other grounds, 551 U.S. 1142 (2007); Semler v. Finch, 2008 WL 4151825 at *4 (D. Minn., September 3, 2008)("[T]he State Department of Human Services * * * is a subdivision of the State of Minnesota.").

The MDMA is the State agency of which the Minnesota's National Guard is part. The National Guard "has been described as an organization with both state and federal characteristics." Uhl v. Swanstrom, 876 F. Supp. 1545, 1566 (N.D. Iowa 1995)("'The Guard occupies a distinct role in the federal structure that does not fit neatly within the scope of either state or national concerns,'" but, "'in each state the National Guard is a state agency, under state authority and control.'"), quoting Knutson v. Wisconsin Air Nat'l Guard, 995 F.2d 765, 767-68 (7th Cir. 1993), cert. denied, 510 U.S. 933 (1993). The Eighth Circuit has not expressly considered the question of Eleventh Amendment immunity with respect to the Minnesota National Guard, or to the MDMA. However, the Court has determined that a damages award against the Arkansas National Guard "would be paid from public monies in the state treasury," such that the award may have been "in violation of the Eleventh Amendment," remanded the question for consideration of the issue, see, Taylor v.

<u>Jones</u>, 653 F.2d 1193, 1205 (8th Cir. 1981), and has generally held that State Agencies are normally entitled to the same degree of immunity as the State. See, <u>Doe v. Nebraska</u>, 345 F.3d 593, 597 (8th Cir. 2003); <u>Murphy v. State of Ark.</u>, 127 F.3d 750, 754 (8th Cir. 1997).

Minnesota Statutes Section 190.05, Subdivision 2, provides that "[t]he 'Department of Military Affairs' or 'Military Department' is comprised of and includes the military forces of the state, the Office of the Adjutant General, all military reservations, military installations, armories, air bases, and facilities owned or controlled by the state for military purposes, and civilians employed by the state for the administration of the Military Department." The statutory language demonstrates that the MDMA is a creature of the State, and is entitled to sovereign immunity to the same extent as the State of Minnesota, and the other State Defendants.[7]

_____

[7]This conclusion is further supported by the numerous Federal Court cases that have determined that the National Guard, in spite of its dual nature, is entitled to Eleventh Amendment immunity, when it is not called to duty by the Federal government. See, e.g., <u>Gample v. Department of the Army</u>, 567 F. Supp.2d 150, 155 (D. D.C. 2008)(the plaintiff was barred from suing the Alaska Army National Guard except where it had acted as part of the Federal Department of the Army); <u>Crout v. Washington</u>, 149 Fed.Appx. 601, 604 (9th Cir., September 1, 2005); <u>Hefley v. Textron, Inc.</u>, 713 F.2d 1487, 1493 (10th Cir. 1983); <u>Jones v. New York State Division of Military and Naval Affairs</u>, 166 F.3d 45, 49 (2nd Cir. 1999); <u>Meadows v. State of Ind.</u>, 854 F.2d 1068, 1069 (7th Cir. 1988); <u>Ursulich v. Puerto Rico Nat'l Guard</u>, 384 F.

(continued...)

The Complaint and Amended Complaint seek only monetary damages, in the form of "payment at a PCA rate plus Interest," of which "[t]he Armory building should be an offset part of the payment." See, Amended Complaint, Docket No. 7, at p. 2 of 13. As a result of the protection afforded to States, and to their agencies, by the Eleventh Amendment, against suits for damages, we find that we are without subject matter jurisdiction to hear the Plaintiff's claims against the Minnesota Attorney General, the Minnesota Department of Human Services, and the MDMA, and we recommend dismissal on that ground.

      b.    The County Defendants' Capacity to be Sued. The County Defendants contend that they are not proper parties to this lawsuit, because they do not have the capacity to be sued under Minnesota law, pursuant to Rule 17(b), Federal Rules of Civil Procedure. See, County Defendant's Memorandum in Support

---

[7](...continued)
Supp. 736, 738 (D. P.R. 1974); Hilen v. United States, 952 F.2d 1397 at *1 (6th Cir. 1992)[Table Decision]); Moore v. Pennsylvania Dep't of Military and Veterans Affairs, 216 F. Supp.2d 446, 454 (E.D. Pa. 2002)(dismissing a claim against the Pennsylvania Department of Military and Veterans Affairs on immunity grounds, as a State Agency, but declining to do so as to the Pennsylvania Army National Guard, on the limited record before it.); Fauber v. Virginia Army Nat'l Guard, 2009 WL 959636 at *3 (W.D. Va., April 9, 2009); Bartley v. United States Dep't of Army, 221 F. Supp.2d 934, 951 (C.D. Ill. 2002).

("County Defendants' Memo), Docket No. 69, at p. 4 of 14.[8] Courts in our District have consistently held that, under Minnesota law, County Departments are not entities which may be sued. See, Everts v. United States Social Security Administration, 2009 WL 3062010 at *2 (D. Minn., September 18, 2009); Neudecker v. Shakopee Police Department, 2008 WL 4151838 at *11 (D. Minn., September 3, 2008)(County Departments of Human Services are not legal entities), citing Rule 17(b)(3), Federal Rules of Civil Procedure, and In re Scott County Master Docket, 672 F. Supp. 1152, 1163 n. 1 (D. Minn. 1987); see also, Shimer v. Shingobee Island Water and Sewer Com'n, 2003 WL 1610788 at *3-4 (D. Minn., March 18, 2003) (County Water and Sewer Commission not a legal entity); Brewton v. City of New York, 550 F. Supp.2d 355, 368 (E.D. N.Y. 2008)(applying Rule 17(b) to Section 1983 action). While municipalities, such as Counties, are legal entities which may be sued, see, Neudecker v. Shakopee Police Department, supra at *11, and Minnesota Statutes §373.01, Subdivision 1, the Plaintiffs have not named Todd County, or Morrison County, as municipalities, in this action. Accordingly, pursuant to Rule 17(b), Federal Rules of

---

[8]The County Defendants also argue that they are immune from any claim for the loss of benefits, under a program of public assistance or public welfare, pursuant to Minnesota Statutes Section 466.03, Subdivision 9, to the extent the Plaintiffs raise State law claims. However, as we have noted, the Plaintiffs do not appear to raise any State law claims, and so, we do not address this argument further.

Civil Procedure, and Minnesota law, we find that the Todd County DHS, and the Morrison County DHS, are not proper parties in this action, and we recommend their dismissal.

Although the claims in the Complaint and Amended do not survive the Defendants' Motions to Dismiss on the grounds we have addressed, in the interests of completeness, and to the extent the Complaint may be read to raise claims against the Counties as municipalities, we address the Defendants' remaining arguments.

      c.   <u>The Rooker-Feldman Doctrine</u>.   The Defendants, both County and State, urge the Court to dismiss the Amended Complaint under Rule 12(b)(1), pursuant to the <u>Rooker-Feldman</u> doctrine because, they argue, a State Court has already decided the issues presented here.  As we have previously explained at length, the <u>Rooker-Feldman</u> doctrine holds that Federal Courts do not possess subject matter jurisdiction over challenges to State Court decisions in judicial proceedings, and is not simply preclusion by another name.  See, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 416 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476 (1983); <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280, 283 (2005); see also, <u>Lemonds v. St. Louis County</u>, 222 F.3d 488, 492 (8th Cir. 2000), cert. denied, 531 U.S. 1183 (2001).  As recently explained by our Court of Appeals:

> A district court is not deprived of jurisdiction over every case in which a plaintiff seeks a result different from the one it obtained in state court * * * . Rather, <u>Rooker-Feldman</u> is implicated in that subset of cases where the losing party in a state court action subsequently complains about that judgment and seeks review and rejection of it.

<u>Skit Intern., Ltd. v. DAC Technologies of Arkansas, Inc.</u>, 487 F.3d 1154, 1157 (8th Cir. 2007)[internal citation omitted], cert. denied, 552 U.S. 991 (2007).[9]

Based upon the overwhelming weight of authority, which has followed the <u>Exxon-Mobil</u> decision, the <u>Rooker-Feldman</u> doctrine only applies in those instances where the plaintiff seeks redress for an injury that was caused by the State Court decision itself. Stated differently, when a losing party in a State Court action asks a Federal District Court to review, and reverse, a State Court Judgment entered against him, the <u>Rooker-Feldman</u> doctrine applies, and the Federal Court is barred from entertaining the losing party's claim on the merits.

---

[9]In <u>MSK EyEs, Ltd. v. Wells Fargo Bank, N.A.</u>, 546 F.3d 533, 539 (8th Cir. 2008), quoting <u>Riehm v. Engelking</u>, 538 F.3d 952, 965 (8th Cir. 2008), the Court reiterated as follows:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.

Here, the 2007 action in Todd County District Court was an appeal of the DHS's decision, in which R. Follis challenged the procedures at the Administrative Hearing, arguing Federal due process violations. See, <u>Follis v. Commissioner of Minnesota Department of Human Services</u>, <u>Court File No. CV-06-104</u>, <u>Docket No. 23-1</u>. The 1998 action is also an appeal of a DHS denial, to the Minnesota Court of Appeals, based on the then-applicable statute that governed PCA payments to family members, which was amended in 2001. See, <u>Follis v. Minnesota Dep't of Human Services</u>, 1998 WL 88194 at *1 (Minn.App., March 3, 1998). The Plaintiff did not raise a claim for equal protection violations in either action, and he did not raise an involuntary servitude claim in the 2007 action. <u>Id.</u>; <u>Follis v. Commissioner of Minnesota Department of Human Services</u>, <u>Court File No. CV-06-104</u>, <u>Docket No. 23-1</u>.

The Defendants argue that the <u>Rooker-Feldman</u> doctrine bars the Plaintiffs' suit, because the District Court would essentially need to overturn the Minnesota Court of Appeals' decision of 2007, that R. Follis was not entitled to the PCA payments, in order for R. Follis to prevail in this action. See, <u>County Defendants'</u>

Memo, at p. 6; State Defendants' Memo, at p. 9.[10]  While the Defendants' argument

may demonstrate that the Plaintiffs' claims are precluded by the doctrines of res

judicata, or collateral estoppel, those claims do not implicate the Rooker-Feldman

doctrine, because R. Follis did not raise the same legal claims -- equal protection, and

involuntary servitude -- as he has raised them here, and he does not challenge the

operation of the Judgments in those cases.[11]  See, Merkl v. Pendleton, 298 Fed.Appx.

534, 534 (8th Cir., November 7, 2008)(concluding that the plaintiff's Section 1983

claims were not barred by Rooker-Feldman, because the plaintiff "presented federal

claims independent from those that he had been previously presented in state court,

---

[10]Both Memoranda cite to cases decided before the Supreme Court clarified the Rooker-Feldman doctrine in Exxon, see, Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995), and Snider v. City of Excelsior Springs, 154 F.3d 809, 811 (8th Cir. 1998).  As we have explained, the state of the law regarding the Rooker-Feldman doctrine has developed appreciably since those cases were decided.

[11]R. Follis did raise a claim of involuntary servitude in the 1998 action.  See, Follis v. Minnesota Dep't of Human Services, 1998 WL 88194 at *2 (Minn. App. 1998).  Contrary to the assertions of the Plaintiffs' Memo in Opposition, that claim was based on the United States Constitution, and not the Minnesota Constitution.  Id. However, here, the Plaintiffs' Complaint and Amended Complaint do not allege that the 1998 decision, which was decided under a different permutation of the statute, caused them any harm, nor do they request that decision be invalidated.  Accordingly, the Rooker-Feldman doctrine does not apply.  See, MSK EyEs, Ltd. v. Wells Fargo Bank, N.A., supra at 539.

and he was not merely seeking review and rejection of the state court judgments");
Riehm v. Engelking, 538 F.3d 952, 965 (8th Cir. 2008).

With respect to the eviction action, the Plaintiffs insist in their Memorandum in Opposition that they do not challenge the history of the contract for deed, but rather, "wish to claim the property as part of the settlement." Docket No. 34, at p. 2. Again, because the Plaintiffs do not specifically challenge the eviction Judgment, the Rooker-Feldman doctrine is inapplicable. Accordingly, we find that the Rooker-Feldman doctrine does not apply, and we do not recommend dismissal of the Plaintiffs' claims on that ground.

2.      Rule 12(b)(6) Challenges.

        a.      Failure to State a Claim.  The Defendants argue that the
Plaintiffs have failed to state a claim upon which relief can be granted.

                1)      The Section 1983 Claims.  "To state a claim under
§1983, a plaintiff must allege the violation of a right secured by the Constitution and
laws of the United States, and must show that the alleged deprivation was committed
by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).
In tandem with the immunity afforded by the Eleventh Amendment, "neither a State
nor its officials acting in their official capacity are 'persons' under §1983."  Will v.
Michigan Dep't of State Police, supra at 71.  As with Eleventh Amendment immunity,
this extends to "arms of the state."  See, McLean v. Gordon, 548 F.3d 613, 618 (8th
Cir. 2008), cert. denied, --- U.S. ----, 129 S.Ct. 2444 (2009); quoting Howlett v. Rose,
496 U.S. 356, 365 (1990)("Will establishes that the State and arms of the State * * *
are not subject to suit under §1983 * * *."); see also, Harris v. Missouri Court of
Appeals, 787 F.2d 427, 429 (8th Cir. 1986), cert. denied, 479 U.S. 851 (1986).

        Here, as to the State Defendants, the Plaintiffs have made no allegation that a
particular individual, acting under the color of State law, violated their rights.  While
the Plaintiffs make the bare assertion, that the Minnesota DHS was "lax" in

supervising the County DHSs, who denied the Plaintiffs PCA wage benefits, the Minnesota DHS -- as well as the other State Defendants -- is not a "person" from whom damages may be recovered pursuant to Section 1983. As a consequence, the Plaintiffs' claims, that the State Defendants violated their right to the equal protection of the laws, and subjected R. Follis to involuntary servitude, in violation of the Thirteenth Amendment, are not cognizable under the Section 1983 framework, and therefore, fail to state a claim.

To the extent the Complaint and Amended Complaint can be read to assert claims against the County governments, rather than the County Departments, a municipality such as a County government is a "person" under Section 1983. See, Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978). However, "a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality." Scheeler v. City of St. Cloud, Minn., 402 F.3d 826, 832 (8th Cir. 2005), cert. denied, 546 U.S. 1090 (2006), quoting Turney v. Waterbury, 375 F.3d 756, 761-62 (8th Cir. 2004); Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009); see also, Bahr v. County of Martin, 771 F. Supp. 970, 975 (D. Minn. 1991)(to maintain a Section 1983 claim against a County, the plaintiff must show "an official policy"). A Plaintiff "'need not * * * specifically

plead the existence of an unconstitutional policy or custom to survive a motion to dismiss,'" but, nevertheless, the Complaint must include "'allegations, reference, or language by which one could begin to draw an inference that the conduct complained of * * * resulted from an unconstitutional policy or custom.'" Walls v. City of Bridgeton, Mo., 2009 WL 2602193 at *4 (E.D. Mo., August 24, 2009), quoting Doe v. Sch. Dist. of Norfold, 340 F.3d 605, 614 (8th Cir. 2003).

On an indulgent reading of the pleadings here, we are unable to discern any allegation, from which we could draw the inference, that the County Defendants acted pursuant to a policy or custom, with respect to the Plaintiffs' allegations of equal protection violations, and involuntary servitude. Further, the Plaintiffs have not alleged any well-settled pattern of inaction, see, Tilson v. Forrest City Police Dept., 28 F.3d 802, 807 (8th Cir. 1994)("[I]naction or laxness can constitute government custom if it is permanent and well settled."), cert. denied, 514 U.S. 1004 (1995), nor that a policy maker was involved in the alleged violations. See, McGautha v. Jackson County, Mo., 36 F.3d 53, 56 (8th Cir. 1994)("Although municipal liability for violating constitutional rights may arise from a single act of a policy maker * * * that act must come from one in an authoritative policy making position and represent the official policy of the municipality."), cert. denied, 515 U.S. 1133 (1995). As such, the

Plaintiffs have failed to state a claim under Section 1983 against the Counties, and we recommend dismissal, to the extent that their pleadings can be read to raise claims against the Counties. See, <u>Uland v. City of Winsted</u>, 570 F. Supp.2d 1114, 1119 (D. Minn. 2008), citing <u>Springdale Educ. Ass'n v. Springdale School Dist.</u>, supra at 651.

2) <u>The Section 1981 Claim</u>. Title 42 U.S.C. Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every state to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens * * *." The statute prohibits discrimination on the basis of race. See, <u>Smith v. Ouachita Technical College</u>, 337 F.3d 1079, 1080 (8th Cir. 2003); <u>Domino's Pizza, Inc. v. McDonald</u>, 546 U.S. 470, 474 (2006)("Among the many statutes that combat racial discrimination, § 1981 * * * has a specific function: It protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race.").

The Eighth Circuit has recognized two distinct claims which may be raised under Section 1981, a "Right-to-Contract" claim, and a "Full-and-Equal Benefit" claim. See, <u>Bediako v. Stein Mart, Inc.</u>, 354 F.3d 835, 840 (8th Cir. 2004). The Court

has found that there are "four elements of a Section 1981 claim: 1) membership in a protected class; 2) discriminatory intent on the part of the defendant; 3) engagement in a protected activity; and 4) interference with that activity by the defendant." Gregory v. Dillard's, Inc., 565 F.3d 464, 469 (8th Cir. 2009), cert. denied, --- U.S. ---, 130 S.Ct. 628 (2009).

While it is not entirely clear from the pleadings, we interpret the Plaintiff's citation to this provision, in reference to the PCA wage benefits, as raising a claim that the refusal of the various DHSs to pay PCA wage benefits, constituted illegal interference with the contract for deed that the Plaintiffs held with the MDMA, and therefore, with their right to make contracts. The pleadings, by referencing equal protection, also appear to raise a "Full-and-Equal Benefit" claim. Regardless of how we read their claims, we find that the Plaintiffs have failed to meet the pleadings standards required of them.

Even though a plaintiff need not plead the elements of a prima facie Section 1981 case, in order to survive a Motion to Dismiss, see, Amos v. GEICO Corp., 2006 WL 3437608 at *4 (D. Minn., November 20, 2006), a Complaint must put the opposite party on "fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." Id., quoting, Parkhill v.

Minnesota Mutual Life Ins. Co. 286 F.3d 1051, 1057 (8th Cir. 2002). Here, the

Plaintiffs have not alleged that they are members of a protected class, and they have

alleged only that two (2) other people have received the PCA payments, while they

did not, and they have alleged no facts from which it could be inferred that the

Defendants acted with discriminatory intent, on the basis of race or ethnic

background, in denying the Plaintiffs the PCA wage benefits.[12] As a consequence, the

Plaintiffs have not stated a cognizable cause of action under Section 1981. See,

McDonald v. Overnite Exp., 2009 WL 3517976 at *7 (D. Minn., October 26,

2009)(dismissing Section 1981 claim because it lacked "any factual allegations of

discriminatory conduct"); Albert v. Rapid Recovery, Inc., 2009 WL 277544 at *3 (D.

Minn., February 4, 2009); cf., Amos v. GEICO, Corp., supra at *6-7.

---

[12]In their Memorandum in Opposition to Lifting the Stay, the Plaintiffs asserted
that they believe that the Defendants discriminated against them for working with a
State Representative so as to make the changes in the law that allowed waivers for
family members. See, Docket No.56, at p. 4-5 of 7. However, that assertion does not
allege discrimination based on "race, alienage, ancestry, or ethnic characteristics,"
which is essential in order to sustain a claim under Section 1981. See, Albert v. Rapid
Recovery, Inc., 2009 WL 277544 at *3 (D. Minn., February 4, 2009), citing Weseman
v. Meeker County, 659 F. Supp. 1571, 1575 (D. Minn. 1987)("Plaintiffs have made
no allegations of discrimination based on race, alienage, ancestry, or ethnic
characteristics, nor have they presented to the Court any evidence indicating such
discrimination[;]" "[t]herefore, there cause under 42 U.S.C. § 1981 must fail.").

3.     Res Judicata.  The Defendants also argue that the Plaintiffs' claims are barred by res judicata because, they argue, the claims have been fully litigated in the Minnesota State Courts.  While we agree that the R. Follis has previously litigated his entitlement to PCA benefits, and that his claims, as raised here, are largely based on the same factual predicates, we find that the doctrine of res judicata bars only part of the Plaintiffs' claims.

a.     Standard of Review.  "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  Migra v. Warren City School Dist. Board of Education, 465 U.S. 75, 81 (1984), citing Allen v. McCurry, 449 U.S. 90, 96 (1980).  "Prior state court adjudications are given preclusive effect even in later federal §1983 actions."  Simmons v. O'Brien, 77 F.3d 1093, 1096 (8th Cir.1996); see also, Migra v. Warren City School Dist. Board of Education, supra at 83 ("Allen [v. McCurry, 465 U.S. 75 (1984)] * * * made clear that issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal §1983 suit as they enjoy in the courts of the State where the judgment was rendered.").  Accordingly, we apply Minnesota's principles of res judicata in order to determine the preclusive effect of the State Courts' rulings.

Under Minnesota law, "[r]es judicata precludes parties from raising subsequent claims in a second action when: '(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privities; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter.'"  Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P, 732 N.W.2d 209, 220 (Minn. 2007), quoting Hauschildt v. Beckingham, 686 N.W.2d 829, 840 (Minn. 2004).  "Res judicata prohibits parties from raising a claim in a second suit that was, or 'could have been,' litigated in the earlier action."  Drewitz v. Motorwerks, Inc., 728 N.W.2d 231, 239 (Minn. 2007), citing Hauschildt v. Beckingham, supra at 840; see also, Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P, supra at 220 ("Res judicata applies equally to claims actually litigated and to claims that could have been litigated in the earlier action."), citing State v. Joseph, 636 N.W.2d 322, 327 (Minn. 2001).

b.    Legal Analysis.

1)    The PCA Wage Benefits.  Here, even though all of the Plaintiff's claims were dismissed before the trial stage,[13] "it is well-established that

_____

[13]It appears that the Todd County Judgment in 2007, on appeal from the DHS administrative proceedings, was based on a review of the Administrative Record.  See,
(continued...)

a Rule 12(b)(6) dismissal is a 'judgment on the merits' for res judicata purposes unless the plaintiff is granted leave to amend or the dismissal is reversed on appeal." United States v. Maull, 855 F.2d 514, 516 n. 3 (8th Cir. 1988), citing, as examples, Federated Dep't Stores v. Moitie, 452 U.S. 394, 399 n. 3 (1981), Carter v. Money Tree Co., 532 F.2d 113, 115 (8th Cir. 1976), cert. denied, 426 U.S. 925 (1976), and Glick v. Ballentine Produce, Inc., 397 F.2d 590, 593 (8th Cir. 1968); see also, Lommen v. City of East Grand Forks, 97 F.3d 272, 275 (8th Cir. 1996)(where Minnesota State Court action was dismissed, based upon the defendant police officer's official immunity, a subsequent Federal Court lawsuit against the same defendant was barred by res judicata); State v. Joseph, supra at 328 (dismissal based upon statute of limitations is a final Judgment, for purposes of res judicata); Hanson v. Gilliland, 2008 WL 2168536 at *3 (Minn.App., 2008)(same); Nitz v. Nitz, 456 N.W.2d 450, 452 (Minn.App. 1990)(same).

As to the time period, from August 1, 2002, to June 6, 2005, with respect to the Todd County DHS's refusal to award PCA wage benefits to R. Follis, the suit in Federal Court is plainly barred by the doctrine of res judicata, for the parties are the

---

[13](...continued)
Docket No 23-1.

same, the underlying facts are the same, and the Minnesota District Court for Todd County issued a Judgment, which adjudicated that period of time, and became final when R. Follis' appeals period expired. Moreover, there is nothing which would indicate that R. Follis was not afforded a full and fair opportunity to litigate his claims, due to "significant procedural limitations in the prior proceeding," or different incentives than he has here, and he plainly had the opportunity to raise all of his constitutional challenges. See, State v. Joseph, supra at 328. As such, the Plaintiffs' claims, based upon the denial of wage benefits, for the period from August of 2002, to June of 2005, by the Judgment in favor of the Todd County DHS, may not now be heard by this Court -- regardless of the different constitutional claims. See, Rucker v. Schmidt, 768 N.W.2d 408, 412 (Minn.App. 2009); see also, Sabbia v. Marshall Fields, 2007 WL 671314 at *3 (D. Minn., March 1, 2007)("A person who has a choice of more than one remedy for a given wrong may not assert them serially, but must advance claims all at once when such claims arise out of the same circumstances and share the same common nucleus of facts."), citing Mills v. Des Arc Covalescent Home, 872 F.2d 823, 826 (8th Cir. 1989).

We also conclude that G. Follis, with respect to that same time period, and to the extent she has standing to sue for a denial of wage benefits to R. Follis, is similarly

barred, as she was in privity with R. Follis as to that action. Under Minnesota law, "[t]here is no prevailing definition of privity which can be automatically applied," Margo-Kraft Distrib., Inc. v. Minneapolis Gas Co., 294 N.W.2d 45, 47 (Minn. 1972), and "[a] husband and wife are not in privity solely because of their marital relationship." Deli v. Hasselmo, 542 N.W.2d 649, 656 (Minn. App. 1996), citing Dart v. McGraw, 283 N.W. 538, 539 (Minn. 1939). However, privity exists where an individual's interests "are represented by a party to the action." See, Margo-Kraft Distrib. Inc. v. Minneapolis Gas Co., supra at 48. "[T]his category of privity has been the subject of the most confusion in the case law," and requires a "careful examination of the facts of each case." See, Pang Nhia Thao v. Central States Health & Life Co. of Omaha, 2009 WL 3255883 at *3 (Minn.App., October 13, 2009), citing Margo-Kraft Distrib. Inc. v. Minneapolis Gas Co., supra at 48.

Here, G. Follis has alleged that her financial circumstances were negatively impacted by the Defendants' failure to award benefits to R. Follis for the care he provided to their son. Since their interests in the benefits are quintessentially the same, we find that G. Follis is precluded by the doctrine of res judicata, to the same

extent that R. Follis' claims are precluded.[14]  See, <u>Rachuy v.  Anchor Bank</u>, 2009 WL

397098 at *3 (D. Minn., February 17, 2009)(applying Minnesota privity law, where

husband and wife were in privity with respect to their joint bank account).[15]

---

[14]As pertains to privity with respect to the contract for deed, as we found in our previous Report and Recommendation concerning the previous Motions for Injunctive relief, if G. Follis signed the contract, then she would have been in privity with R. Follis but, if she did not sign the contract, then she would not have a legal basis on which to contest the eviction.  Therefore, G. Follis' claim, as to the contract for deed -- to the extent that she has raised any such claim -- is precluded to the same extent as R. Follis' claim is precluded.  See, <u>Docket No. 17</u>, at p. 17, n. 6; <u>Order</u>, <u>Docket No. 30</u>, at p. 7 n. 1 (observing that the Plaintiffs did not object to that finding).

[15]Not all aspects of the Plaintiffs' claims with respect to the PCA wage benefits would be barred by res judicata, had they been sufficiently pled -- which they are not here.  There are two periods of time, one prior to, and one after, the period of time adjudicated in the Todd County Judgment of 2007.  As to the period after, the doctrine would not apply.  See, <u>Wedow v. City of Kansas City, Mo.</u>, 442 F.3d 661, 669 (8th Cir. 2006)(res judicata did not apply to a claim which was "separate and distinct with regard to the relevant time frame for recovery").  As to the period before, when the Plaintiffs were living in Morrison County, we cannot hold, on this limited Record, that the Plaintiffs could have raised their claim against Morrison County at the time that they challenged the Todd County DHS's denial of benefits.

We also do not find that the State Court Judgment in 1998, with respect to Morrison County and the Minnesota DHS, to have a preclusive effect on this action, as it was decided on an earlier version of the relevant statute, which is no longer operative, and concerned a different time period.  Cf., <u>White Earth Band of Chippewa Indians v. Alexander</u>, 683 F.2d 1129, 1134 (8th Cir. 1982)(collateral estoppel, or issue preclusion is prevented by a significant change in the law), cert. denied, 459 U.S. 1070 (1982); <u>Ripplin Shoals Land Co., LLC v. United States Army Corps of Engineers</u>, 440 F.3d 1038, 1042 (8th Cir. 2006)("[R]es judicata does not apply to claims that did not

(continued...)

With respect to the contract for deed, we are aware that the State Court Judgment, which denied R. Follis a temporary injunction, was based on its determination that the Todd County action for PCA wage benefits was not an action which arose under the contract for deed, but that was not a final Judgment on the merits of the cancellation of the contract, or the eviction, which occurred later. See, Medtronic, Inc. v. Gibbons, 684 F.2d 565, 569 (8th Cir. 1982)("[T]he granting or denial of a preliminary injunction is generally not based on a final decision on the merits and is not a final judgment * * *."); Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 603 (8th Cir. 1999)(a preliminary injunction is normally not decision on the merits); see also, Minnesota Statutes §559.211, Subdivision 1 ("In an action arising under or in relation to a contract for the conveyance of real estate or any interest therein, the district court * * * has the authority * * * to enter an order temporarily restraining or enjoining further proceedings * * *"); Smith v. Spitzenberger, 363 N.W.2d 470, 472 (Minn.App. 1985)("[A] trial court may not grant injunctive relief [under Section 559.211] unless an underlying cause of action exists.")

---

[15](...continued)
exist went the first suit was filed.").

However, and more to the point here, the Plaintiffs attempt to ground their request for the Armory as damages for their claimed legal entitlement to the PCA wage benefits -- a claim which they have already fully litigated, and have received a final Judgment, from a Court of competent jurisdiction, which held that the PCA benefits, which relate to the relevant time period, were not owed by the Todd County DHS. As a consequence, the Plaintiffs may not retry that claim in Federal Court, as a result of the preclusive effect of res judicata.

Moreover, to the extent that the Plaintiffs have brought their action in Federal Court, in an effort to unravel the eviction action, and have the Armory returned to them as damages, even though they have not pled a cognizable claim, under either Federal or State law, which actually relates to the Armory or the contract for deed, this Court has no authority to grant such relief. As the Supreme Court of Minnesota has observed, if the Plaintiffs "believed that the decision of the * * * Court was erroneous, [they] had both the right and the opportunity to appeal." State v. Joseph, supra at 329. The Federal Courts can grant them no remedy now, on untried constitutional grounds, simply because they were dissatisfied with the result in State Court.

In sum, finding no claims that withstand the Defendants' Motions to Dismiss, we recommend that the Defendants' Motions be granted.

NOW, Therefore, It is --

RECOMMENDED:

1.    That the Motion to Dismiss of the Defendants State of Minnesota Attorney General, Human Services Department, and Military Affairs Department [Docket No. 26], be granted.

2.    That the Motion to Dismiss of the Defendants Morrison County Human Services Department, and Todd County Human Services Department [Docket No. 67], be granted.


Dated:  February 16, 2010          *s/Raymond L. Erickson*
                                    Raymond L. Erickson
                                    CHIEF U.S. MAGISTRATE JUDGE


## N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 2, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with

this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 2, 2010**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.